UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:15-CR 398 T 24 TGW

CHRISTOPHER M. MAGUIRE

SEALED

18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 2314
18 U.S.C. §§ 981(a)(1(C)
and 982(a)(1) ~ Forfeiture
28 U.S.C. § 2461(c) ~ Forfeiture

## INDICTMENT

The Grand Jury charges:

### COUNTS ONE THROUGH SIXTEEN
(Wire Fraud)

### Introduction

At times material to this Indictment:

1.    From December 2012, through August 2013, the defendant,
Christopher M. Maguire, controlled a business checking account at TD Bank titled
Vivid Funding, LLC, ending 9601 (hereinafter referred to as TD Bank Vivid Funding
9601 account).   Maguire was the only signer on the account.   Maguire never
formally registered this entity with the State of Florida.

2.    From January, 2013, through October, 2013, Maguire controlled an
account at TD Bank titled M Development, ending 6131 (hereinafter referred to as
TD Bank M Development 6131 account).   Maguire was a signer on the account.

From October, 2013, through February, 2014, Maguire controlled an account at Wells Fargo Bank titled M Development, ending 6695 (hereinafter referred to as Wells Fargo Bank M Development 6695 account).   Maguire was the only signer on the account.   Maguire never formally registered this entity with the State of Florida.

3.      IQ Options, LLC, is a Florida limited liability company, incorporated by the defendant, Christopher M. Maguire on or about December 26, 2013.   From April, 2012, through March, 2014, Maguire controlled an account at Fifth Third Bank titled IQ Options, ending 5061 (hereinafter referred to as Fifth Third Bank IQ Options 5061 account).   Maguire was the only signer on the account.   From March, 2014, through May, 2014, Maguire controlled an account at Regions Bank titled IQ Options, ending 5310 (hereinafter referred to as Regions Bank IQ Options 5310 account).   From April, 2014, through August, 2014, Maguire controlled an account at SunTrust Bank titled IQ Options, ending 6174 (hereinafter referred to as SunTrust Bank IQ Options 6174 account).   Maguire was the only signer on the account.

4.      The Federal Reserve maintains a secure, electronic financial transmission system, known as Fedwire, that is used for wire transfers of funds between bank accounts.   Using Fedwire, each wire transaction is processed individually and settled upon receipt via a highly secure electronic network. Fedwire maintained its transmission hubs for wire transmissions in the states of New Jersey and Texas at various times during the course of the scheme set forth

2

herein.   At no time did Fedwire maintain a transmission hub in the state of Florida.

## The Scheme

5.      Beginning on an unknown date, but at least as early as in or about May 2012, and continuing thereafter, through and including at least April 2014, in the Middle District of Florida, and elsewhere,

CHRISTOPHER M. MAGUIRE,

the defendant herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Scheme

6.      It was a part of the scheme and artifice that the defendant would and did, both individually and through others directed by him, solicit victim investors to place money into a fraudulent investment program, described by the defendant as a "proof of funds loan" investment.

7.      It was further a part of the scheme and artifice that the defendant would and did, both individually and through others directed by him, make false and fraudulent representations, pretenses and promises, orally and in writing, to victim investors to induce those victim investors to invest in the defendant's "proof of funds loan" investment, including, but not limited to, the following false and fraudulent representations, pretenses and promises:

a.      The victim investors' funds would be pooled in a "trust account" to which only the defendant had access.

3

b.      The victim investors' funds would be issued as temporary loans to a business entity seeking financing.

c.      The purpose of the temporary loans to a business entity seeking financing was to demonstrate the business entity's possession of sufficient assets, enabling the business entity to satisfy requirements set forth by the lending institution offering financing to the business entity.

d.      The victim investors' funds would never be removed from the trust account that the defendant controlled during the course of the "proof of funds loan."

e.      The business entity using the "proof of funds loan" was able to use the victim-investors' funds as proof of the business entity's possession of sufficient assets by temporarily naming the defendant as an officer of the business entity.

f.      The business entity would pay a fee of 5-20% of the amount of the "proof of funds loan" to the defendant, regardless of whether the business entity was able to obtain the financing it sought.

g.      The victim-investors' funds, as well as a portion of the fee paid by the business entity, would be returned to the victim investors within 5 to 30 days after the "proof of funds loan" was made to the business entity.

8.      It was further a part of the scheme and artifice that the defendant did not engage in any "proof of funds loans" with the victim-investors' funds.

4

9.      It was further a part of the scheme and artifice that the defendant, in order to create the illusion that the "proof of funds loan" investment was earning sufficient returns to repay the victim investors within the specified times, would and did create and cause to be created false bank account statements showing balances far in excess of those in any account controlled by the defendant during the course of this scheme.   The defendant would then present and cause to be presented to victim investors these false bank account statements.

10.     It was further a part of the scheme and artifice that the defendant would and did create and cause to be created false form 1099s, purporting to show victim investors their interest and short-term investment gains from supposed "proof of funds loans."   The defendant would then present and cause to be presented to victim investors these false form 1099s, in order to create the illusion that the defendant had actually used the victim-investors' funds for "proof of funds loans."

11.     It was further a part of the scheme and artifice that the defendant would and did, unbeknownst to the victim investors, use, disburse, and dispose of victim-investors' funds in one or more of the following ways:

a.      The defendant would and did make payments to some victim investors that were purportedly returns on said victim's investments, but which were, in fact, payments made with funds obtained from other victim investors.

b.      The defendant would and did pay others that the defendant directed to promote and seek investors for the "proof of funds loans."

5

c.      The defendant would and did pay his own personal expenses and the expenses of others.

12.      It was further a part of the scheme and artifice that the defendant would and did engage in monetary transactions using victim-investors' funds that had been stolen, converted and taken by fraud, which monetary transactions were for his own personal benefit and the benefit of others and not for the purposes for which the victim-investors' funds were intended.

13.      It was a further a part of the scheme and artifice that the defendant would and did conceal, misrepresent, and hide, and cause to be concealed, misrepresented, and hidden, the purpose of acts performed in furtherance of the scheme and artifice.

### Execution of the Scheme

14.      On or about the dates set forth below in each count, in the Middle District of Florida and elsewhere, for the purpose of executing the aforesaid scheme and artifice, the defendant did cause to be transmitted by means of wire communication in interstate and foreign commerce the following:

| COUNT | DATE | NATURE OF WIRE |
|-------|------|----------------|
| One | April 2, 2013 | Wire transfer of $10,000.00 from the bank account of All-Pro Pastors, Inc. at Regions Bank to the TD Bank Vivid Funding 9601 account, via Fedwire |
| Two | April 2, 2013 | Wire transfer of $515,000.00 from the bank account of Champions Church, Inc. at BB&T Bank to the TD Bank Vivid Funding 9601 account, via Fedwire |

6

| COUNT | DATE | NATURE OF WIRE |
|-------|------|----------------|
| Three | April 2, 2013 | Wire transfer of $25,000.00 from the bank account of N.E. at Wells Fargo Bank to the TD Bank Vivid Funding 9601 account, via Fedwire |
| Four | April 2, 2013 | Wire transfer of $10,000.00 from the bank account of D.E. at BB&T Bank to the TD Bank Vivid Funding 9601 account, via Fedwire |
| Five | October 3, 2013 | Wire transfer of $115,000.00 from the bank account of P.A. at Corporate One Federal Credit Union to the TD Bank M Development 6131 account, via Fedwire |
| Six | October 4, 2013 | Wire transfer of $55,500.00 from the bank account of J.B. at JP Morgan Chase Bank to the TD Bank M Development 6131 account, via Fedwire |
| Seven | October 24, 2013 | Wire transfer of $25,000.00 from the bank account of P.A. at Merrill Lynch Wealth Management/Bank of America to the Wells Fargo Bank M Development 6695 account, via Fedwire |
| Eight | October 24, 2013 | Wire transfer of $300,000.00 from the bank account of J.B. at JP Morgan Chase Bank to the Wells Fargo Bank M Development 6695 account, via Fedwire |

| COUNT | DATE | NATURE OF WIRE |
|-------|------|----------------|
| Nine | October 25, 2013 | Wire transfer of $200,000.00 from the bank account of R.N. at Seaside National Bank to the Wells Fargo Bank M Development 6695 account, via Fedwire |
| Ten | November 15, 2013 | Wire transfer of $250,000.00 from the bank account of R.N. at Suntrust Bank to the Wells Fargo Bank M Development 6695 account, via Fedwire |
| Eleven | January 17, 2014 | Wire transfer of $50,000.00 from the bank account of R.M. at Centerstate Bank to the Wells Fargo Bank M Development 6695 account, via Fedwire |
| Twelve | March 5, 2014 | Wire transfer of $25,000.00 from the bank account of R.M. at Centerstate Bank of Florida to the Fifth Third Bank IQ Options 5061 account, via Fedwire |
| Thirteen | March 14, 2014 | Wire transfer of $40,000.00 from the bank account of R.M. at Centerstate Bank of Florida to the Fifth Third Bank IQ Options 5061 account, via Fedwire |
| Fourteen | April 4, 2014 | Wire transfer of $50,000.00 from the bank account of D.P. at Englewood Bank & Trust to the Regions Bank IQ Options 5310 account, via Fedwire |
| Fifteen | May 19, 2014 | Wire transfer of $30,000.00 from the bank account of Individual A at Fifth Third Bank, on behalf of R.S. and C.F., to the SunTrust Bank IQ Options 6174 account, via Fedwire |
| Sixteen | May 20, 2014 | Wire transfer of $50,000.00 from the bank account of C.F. at Corporate One Federal Credit Union, to the SunTrust Bank IQ Options 6174 account, via Fedwire |

All in violation of Title 18, United States Code, Section 1343.

8

## COUNTS SEVENTEEN THROUGH TWENTY
### (Illegal Monetary Transactions)

1.      The substance of the scheme to defraud and its manner and means are described in Paragraphs 1 through 13 of Counts One through Fourteen of this Indictment.   The Grand Jury hereby realleges those paragraphs and incorporates such paragraphs by this reference as though fully set forth herein.

2.      On or about the dates set forth below, in the Middle District of Florida and elsewhere,

CHRISTOPHER M. MAGUIRE,

the defendant herein, did knowingly engage and attempt to engage in the described monetary transactions, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| Seventeen | October 24, 2013 | Wire transfer of $267,606.60 from the bank account of M DEVELOPMENT (ending in 6695) at Wells Fargo Bank to the bank account of Alpha-Omega Title at BB&T Bank, via Fedwire, for the purchase of the real property located at 26239 Sword Dancer Drive, Wesley Chapel, Florida |
| Eighteen | November 15, 2013 | Purchase of an official check for $46,770.00 using funds from the bank account of M DEVELOPMENT (ending in 6695) from Wells Fargo Bank and the subsequent use of the check to purchase a 2011 BMW 535i Sedan (VIN WBAFR7C57BC800311) from Fields BMW in Orlando, Florida |

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| Nineteen | February 28, 2014 | Wire transfer of $22,000.00 from the bank account of IQ OPTIONS (ending in 5061) at Fifth Third Bank to the bank account of IGWT Media, Inc., at Capital One Bank, via Fedwire, as an investment in the "Theory Project," which involved the promotion of rap musicians |
| Twenty | March 14, 2014 | Purchase of an official check for $15,000.00 using funds from the bank account of IQ OPTIONS (ending in 5061) from Fifth Third Bank and the subsequent use of the check to pay Realty International rent on Maguire's then-residence |

All in violation of Title 18, United States Code, Section 1957.

### COUNT TWENTY-ONE
### (Interstate Transportation of Stolen Property)

On or about October 5, 2013, in the Middle District of Florida and elsewhere,

### CHRISTOPHER M. MAGUIRE,

the defendant herein, did unlawfully transport, transmit, and transfer in interstate commerce, and cause to be transported, transmitted, and transferred in interstate commerce, from Orlando, Florida, to Newburyport, Massachusetts, stolen money with a value of $5,000 or more, that is, funds in the amount of $6,138.11 from victim-investors P.A. and J.B., knowing the same to have been taken by fraud.

In violation of Title 18, United States Code, Section 2314.

10

## FORFEITURE

1.      The allegations contained in Counts One through Nineteen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) as well as

Title 18, United States Code, Section 982(a)(1).

2.      From his engagement in the violations alleged in Counts One through Sixteen, involving wire fraud offenses, contrary to the provisions of Title 18, United States Code, Section 1343, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      From his engagement in the violations alleged in Counts Seventeen through Twenty, involving substantive money laundering violations, contrary to the provisions of Title 18, United States Code, Section 1957, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

4.      From his engagement in the violation alleged in Count Twenty-One, involving interstate transportation of stolen property, contrary to the provisions of

Title 18, United States Code, Section 2314, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

5.    The specific assets to be forfeited include, but are not limited to, a money judgment of at least $5,448,971.96, which is the proceeds of the offenses.

6.    If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section

853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

Foreperson

A. LEE BENTLEY, III
United States Attorney

By: 

Sara C. Sweeney
Assistant United States Attorney

By: 

Robert A. Mosakowski
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
APR 1991

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

CHRISTOPHER M. MAGUIRE

### INDICTMENT

Violations:

Title 18 United States Code, Section 1343
Title 18 United States Code, Section 1957
Title 18 United States Code, Section 2314

A true bill,

_____
Foreperson

Filed in open court this 22nd day

of September, 2015.

_____
Clerk

Bail $_____

GPO 863 525