AF Approval _____   Chief Approval _____

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:15-cr-398-T-24TGW

CHRISTOPHER A. MAGUIRE

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, CHRISTOPHER A. MAGUIRE, and the attorney for the defendant, Howard C. Anderson, mutually agree as follows:

**A.    Particularized Terms**

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts Sixteen and Seventeen of the Indictment.  Count Sixteen charges the defendant with Wire Fraud in violation of 18 U.S.C. § 1343.  Count Seventeen charges the defendant with Illegal Monetary Transactions in violation of 18 U.S.C. § 1957.

2.    Maximum Penalties

Count Sixteen carries a maximum sentence of twenty (20) years imprisonment, a fine of $250,000, a term of supervised release of three (3) years, and a special assessment of $100.

Defendant's Initials _CM_

Count Seventeen carries a maximum sentence of ten (10) years imprisonment, a fine of $250,000 or a fine of not more than twice the amount of the criminally derived property involved in the transaction, a term of supervised release of three (3) years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.     Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count Sixteen are:

First:      That the defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false and fraudulent pretenses, representations or promises;

Second:   That the false or fraudulent pretenses, representations or promises related to a material fact;

Third:     That the defendant acted willfully with an intent to defraud; and

Fourth:    That the defendant transmitted or caused to be transmitted by wire, radio, television in interstate commerce some communication for the purpose of executing the scheme to defraud.

The elements of Count Seventeen are:

Defendant's Initials _CM_                    2

| First: | The defendant knowingly engaged or attempted to engage in a monetary transaction; |
|---|---|
| Second: | The defendant knew the transaction involved property or funds that were the proceeds of some criminal activity; |

| Third: | The property had a value of more than $10,000; |
|---|---|

| Fourth: | The property was in fact the proceeds of wire fraud; and |
|---|---|

| Fifth: | The transaction took place in the United States. |
|---|---|

4.    Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Counts One through Fifteen and Counts Eighteen through Twenty-One, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to all victims.  The final amount of restitution and all specific recipients will be determined by the Court at the time of sentencing.

Defendant's Initials _CM_                3

7.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea

Defendant's Initials   _CM_                    4

Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.     Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable

Defendant's Initials _CM_          5

guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

     10.    Use of Information - Section 1B1.8

     Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

     11.    Cooperation - Responsibilities of Parties

     a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any

Defendant's Initials  *CM*        6

other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.      It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)      The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)      The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a

Defendant's Initials *CM*                    7

term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing

Defendant's Initials                     8

limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

    12.   Forfeiture of Assets

        The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(c) and § 982(a)(1) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: a $4,938,574.40 money judgment, representing the amount of proceeds obtained as a result of the wired fraud scheme charged in Count One of the Indictment, as well as: the real property located at 26239 Sword Dancer Drive, Wesley Chapel, FL 33544, and all attachments thereto, more particularly described as:

> Lot 58, Block 8, Lexington Oaks Village 8 and Village 9, according to the plat thereof, recorded in Plat Book 39, Page(s) 73 through 76, of the Public Records of Pasco County, Florida.

    Parcel ID Number: 1126190090008000580

which was purchased with proceeds of the wire fraud scheme and was involved in the money laundering charged in Count Seventeen of the Indictment. The net proceeds of the forfeiture of this property will be credited to the money judgment.



The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established (1) the amount of the proceeds of the offenses to which defendant is pleading guilty is $4,938,574.40  and (2) the requisite nexus between the real property subject to forfeiture and the offenses to which defendant is pleading, and enter a preliminary order of forfeiture, which shall include the forfeiture money judgment.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the

Defendant's Initials  _CM_                    10

forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. In addition, the defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that specific property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or

Defendant's Initials                 11

indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and U.S.S.G. § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Defendant's Initials           12

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

**B.   Standard Terms and Conditions**

    1.   <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.   The special assessment is due on the date of sentencing.

Defendant's Initials           13

The defendant understands that this agreement imposes no limitation as to fine.

2.      Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.      Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.      Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any

Defendant's Initials                 14

recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.   <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in

Defendant's Initials       15

order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

     6.   <u>Sentencing Recommendations</u>

        It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

     7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

        The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the

Defendant's Initials       16

right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for

Defendant's Initials           18

perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

      11.    <u>Factual Basis</u>

      Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

      From at least in or around May 2012, through at least in or about April 2014, Christopher Maguire operated a "Ponzi" scheme that involved Maguire and promoters employed by him soliciting victim "investors" to send him funds via electronic wire or check.  These victim funds were never actually invested into the opportunity presented to the victim investors by Maguire.   Maguire made numerous "Ponzi payments" back to certain victims, often enticing these victims to reinvest the proceeds of the transaction and sometimes triggered additional investment of funds by the victims or their associates.

      Investigators interviewed numerous victim investors, who all described the scheme in a similar fashion.  Investors were offered by Maguire, or promoters employed by him, the opportunity to invest in so-called "proof of funds loans"

Defendant's Initials         19

administered by Maguire.  These loans, which were to be issued as temporary
loans to corporations seeking financing from a separate funding source,
consisted of pooled funds provided by investors to Maguire.  Maguire claimed to
victim investors that their funds, after being pooled with other investors' funds,
would be placed in a "trust" account over which only Maguire had control.  The
corporation looking to use the funds under Maguire's control would never actually
remove them from the trust account.  The funds were to be used only as proof of
meeting the minimum asset requirements set forth by the funding source offering
financing to the corporation.

Maguire claimed to victim investors that the corporations were able to use
the pooled funds as proof of assets by temporarily naming Maguire as an officer
of the corporation that was seeking long-term funding from the funding source.  A
search of Florida Secretary of State business records and of the internet
revealed no instances in which Maguire was named as an officer of any
corporations outside of those that he used to solicit victim-investors.

The corporation using the pooled investor funds was to send a fee of 5% -
20% to Maguire for the "proof of funds," regardless of whether or not the
financing was approved by the funding source. Further, the principal and return
on investment was to be paid to the victim investor after the loan to the business
was no longer needed, which was to be a period of five to 30 days.  Maguire or
promoters employed by him represented to victim investors that Maguire made
profits by being paid an interest rate by the borrowing corporation in excess of

Defendant's Initials _CM_                    20

what was provided to victim investors as profit. Neither Maguire nor the promoters employed by him informed victim investors that Maguire would pay his own personal expenses from the funds; instead, they represented as stated above that all investor funds would remain in a trust account controlled by Maguire.

Maguire operated companies titled M Development LLC, IQ Options LLC, and Vivid Funding LLC.  Maguire, through these businesses, targeted individuals and groups of victim investors for funding, either directly or through promoters of the scheme.

In or around early 2014, several individuals contacted local, state, and federal law enforcement agencies claiming that they were victims of an investment fraud scheme perpetrated by Maguire.  Between April and October 2014, investigators identified and reached out to dozens of potential victims.  The statements given by the potential victims were corroborated by deposit account records of activity that were obtained from financial institutions.

As to Count 16, IQ Options, LLC, is a Florida limited liability company, incorporated by Maguire on or about December 26, 2013.  From April 2014, through August 2014, Maguire controlled an account at SunTrust Bank titled IQ Options, ending 6174 (hereinafter referred to as SunTrust Bank IQ Options 6174 account).  Maguire was the only signer on the account.

On May 20, 2014, Maguire caused C.F., a victim investor, to wire $50,000 into the SunTrust Bank IQ Options 6174 account.  C.F. was interviewed by

Defendant's Initials           21

investigators and confirmed that the funds were intended to be invested in the "proof of funds loan" opportunity. Maguire did not use C.F.'s funds for any "proof of funds loan investment. Instead, following the receipt of C.F.'s funds, among other funds from victim investors, Maguire initiated dozens of debits from the account, including several purchases at restaurants and bars, $14,500 in cash withdrawals, a $12,000 official check payable to his girlfriend, and "Ponzi" payments to several investors.

As to Count 17, from October 2013, through February 2014, Maguire controlled a business checking account at Wells Fargo titled M Development, ending 6695 (hereinafter referred to as Wells Fargo M Development 6695). Maguire was the only signer on the account.

On October 24, 2013, a wire in the amount of $267,606.60 was sent from the Wells Fargo M Development 6695 account to Alpha-Omega Title Service. A general warranty deed naming a trust controlled by one of Maguire's promoters as the owner of 26239 Sword Dancer Drive, Wesley Chapel, Florida, was prepared by Alpha-Omega Title Service and recorded on October 28, 2013, in Pasco County, Florida. Alpha-Omega Title Service confirmed that the wire described above was for the purchase of 26239 Sword Dancer Drive, Wesley Chapel, Florida.

Prior to the $267,606.60 wire to Alpha-Omega Title Service, the only deposits into the Wells Fargo M Development 6695 account since its inception were on October 24, 2013, the same date as the wire, in amounts of $300,000

Defendant's Initials _C M_          22

and $25,000. Both of these deposits were in the form of wires from victim investors J.B. and P.A., respectively. Both J.B. and P.A. were interviewed by investigators and confirmed that the funds they had wired were intended to be invested in the "proof of funds loan" opportunity.

As to the wires described herein, the Federal Reserve maintains a secure, electronic financial transmission system, known as Fedwire, that is used for wire transfers of funds between bank accounts. Using Fedwire, each wire transaction is processed individually and settled upon receipt via a highly secure electronic network. Fedwire maintained its transmission hubs for wire transmissions in the states of New Jersey and Texas at various times during the course of the scheme set forth herein. At no time did Fedwire maintain a transmission hub in the state of Florida.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials                     23

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___12___ day of May, 2016.

A. LEE BENTLEY, III
United States Attorney

Christopher A. Maguire
Defendant

Sara C. Sweeney
Assistant United States Attorney

Howard C. Anderson
Attorney for Defendant

Robert A. Mosakowski
Assistant United States Attorney
Chief, Economic Crimes

\\USAFLMSFILE21\Users\_Cases\Criminal Cases\M\Maguire, Christopher_2013R02519_scs\p_Plea
Agreement with cooperation.docx

24